**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| NEONODE SMARTPHONE LLC, | Civil Action No. 6:20-cv-00505 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Neonode Smartphone LLC ("Neonode"), by and through its attorneys, hereby alleges the following:

### I.      NATURE OF THE ACTION

1.      This is a patent infringement action for damages and other appropriate remedies for Defendant Apple Inc.'s ("Apple's") unauthorized and infringing manufacture, use, sale, offering for sale, and/or importation of products incorporating Plaintiff's patented inventions.

2.      Neonode is the owner of all right, title, and interest in and to United States Patent Nos. 8,095,879 (the "'879 Patent"), issued January 10, 2012 and titled "User Interface for Mobile Handheld Computer Unit."  A true and correct copy of the '879 Patent is attached hereto as Exhibit A.

3.      Neonode is also the owner of all right, title, and interest in and to United States Patent Nos. 8,812,993 (the "'993 Patent"), issued August 19, 2014 and titled "User Interface." The '993 Patent is a continuation of the '879 Patent.  A true and correct copy of the '993 Patent is attached hereto as Exhibit B.

4.     Apple manufactures, provides, sells, offers for sale, imports, and/or distributes products that directly infringe the '879 and '993 Patents.  Further, Apple indirectly infringes the '879 and '993 Patents by inducing and contributing to infringement by others, including users of Apple devices.

5.     Neonode seeks monetary damages, prejudgment interest, injunctive relief, and other relief for Apple's past and continuing infringement of the '879 and '993 Patents.

## II.     PARTIES

6.     Plaintiff Neonode is a Wyoming limited liability company having a principal place of business at 30 N. Gould St., Suite R, Sheridan, WY 82801.

7.     Upon information and belief, Defendant Apple Inc. is a corporation organized and existing under the laws of California and has several regular and established places of business in the Austin, Texas area, including at 12545 Riata Vista Circle, Austin, Texas.  As of November 2019, Apple stated that it had approximately 7,000 employees in the city of Austin.  As of May 2020, Apple had posted job listings on its website for at least ten jobs at Apple facilities in Austin.  The work done at these locations in Texas includes work related to Apple's iPhone and iPad products.

8.     Upon information and belief, Apple also operates brick-and-mortar Apple Stores at Barton Creek Square, Austin, Texas and at Apple Domain Northside, Austin, Texas.  *See* www.apple.com/retail/.  Apple uses, offers for sale and sells iPhones at these Apple Stores.

9.     Apple may be served with process through its registered agent for service in Texas:  CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### III.     JURISDICTION AND VENUE

10.     This is an action for patent infringement, which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 282, 284, and 285.  The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Apple because Apple has committed acts giving rise to this action within Texas and within this judicial district.  Defendant also regularly does business or solicits business in this District and in Texas, engages in other persistent courses of conduct and derives substantial revenue from products and services provided in this District and in Texas, and has purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District.  For example, Apple has offices within this District.  The website www.apple.com solicits sales of infringing products to consumers in this District and in Texas.  Given these contacts, the Court's exercise of jurisdiction over Apple will not offend traditional notions of fair play and substantial justice.

12.     Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and l400(b) because Apple has regular and established places of business in this District, including at 12545 Riata Vista Circle, Austin, Texas, has committed acts within this judicial district giving rise to this action, and Apple continues to conduct business in this judicial district, including multiple acts of making, selling, using, importing and/or offering for sale infringing products and providing support service to Apple's customers in this District.

### IV.     THE PATENTS-IN-SUIT

13.     Magnus Goertz, the named inventor of both the '879 and '993 Patents, co-founded Neonode AB in or about 2001.  Neonode AB and its affiliated and successor entities developed and commercialized the Neonode N1 and N2 mobile phones.  The N1 and N2

incorporated the company's zForce and Neno touchscreen and interface technologies, which enabled production of a phone small enough to fit in the palm of your hand and allowed the user to navigate menus and functions with simple finger-based taps and swipes. Patents covering these technologies were later issued in the United States to Neonode Inc. As of 2020, the zForce technology had been incorporated into at least 73 million products worldwide.

14.     The '879 and '993 Patents relate to the Neno technology for presenting and interacting with a user interface of a mobile handheld computer unit that includes a touch sensitive display.

15.     The specification common to both the '879 Patent and the '993 Patent identifies technical problems in the prior art and discloses solutions to these problems. For instance, the specification explains that there was a recognized problem in the prior art as of 2002, the priority date of both patents, providing an interface on mobile handheld computers that was "adapted to handle a large amount of information and different kinds of traditional computer-related applications on a small handheld computer unit." ('879 Patent, col. 1:49-52; '993 Patent, col. 1:59-62) It was also "a problem to provide a small handheld computer unit with an easily accessible text input function." ('879 Patent, col. 1:56-57; '993 Patent, col. 1:66-67) It was "also a problem to provide a simple way to make the most commonly used functions for navigation and management available in the environment of a small handheld computer unit." ('879 Patent, col. 1:58-61; '993 Patent, col. 2:1-4)

16.     In order to overcome these problems, the '879 and '993 Patents taught, among other things, that a mobile device with a touch sensitive display could be configured to provide a user interface presenting multiple representations of predefined functions, each of which could be activated when the device detects a particular type of movement of an object on the display,

such as, for example, a user's finger touching the display and gliding away from the touched location.  This teaching was novel, and, among other things, enabled more effective use of the limited space available on the touch sensitive display of a mobile computer unit such as a smartphone.

## V.     APPLE'S KNOWLEDGE OF THE PATENTS-IN-SUIT

17.     On information and belief, Apple has known of the '879 Patent since shortly after it issued, on January 10, 2012.

18.     On or about February 8, 2012, Apple Inc. filed a complaint against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, entitled *Apple Inc. v. Samsung Electronics Co., Ltd*., et al., in the U.S. District Court for the Northern District of California, Case No. 12-CV-00630-LHK ("the *Apple v. Samsung* litigation").  In the *Apple v. Samsung* litigation, Apple alleged that the defendant Samsung entities had infringed and were infringing a number of Apple patents.  Among the Apple patents asserted in this action were U.S. Patent No. 8,046,721, entitled "Unlocking a device by performing gestures on an unlock image."  On information and belief, this patent became widely known as the "swipe to unlock" or "slide to unlock" patent.

19.     On information and belief, Apple and/or its litigation counsel regularly monitored industry press relating to the subject matter of the litigation against Samsung and undertook substantial research and investigative efforts to obtain information pertinent to the subject matter of the litigation against Samsung, on an ongoing basis from at least February 2012 forward.

20.     On or about February 22, 2012, an article entitled "Neonode Beat Apple By Three Years With The Swipe-To-Unlock Patent" was published in the online journal The Tech Journal, https://thetechjournal.com/tech-news/industry-news/neonode-beat-apple-by-three-years-with-the-swipe-to-unlock-patent.xhtml.  The article stated, among other things, that "[a] small but

feisty Swedish company, Neonode figured out how to integrate a slide to unlock feature in its

phones, long before Apple even considering making an iPhone."  The article further stated:

> Apparently, in July 2004, Neonode introduced to the market a small phone called N1 that
>
> had the unlock feature. Neonode already had patented a slide to unlock feature, without
>
> the associated graphics and obtained the patent in December 2002 (the US patent
>
> number: 8095879).

*Id.*  The article included images of Figures 11 and 12 from the '879 Patent.  On information and

belief, Apple became aware of this article shortly after it was published.

21.     On or about February 27, 2012, an article entitled "A Swedish Company Claims It

Owns A Swipe Patent Used By Apple" was published in the online journal Tech Crunch,

https://techcrunch.com/2012/02/27/a-swedish-company-claims-it-owns-a-swipe-patent-that-is-

used-by-apple/.  The article stated, among other things:

> Another front has opened in the multi-faceted story of patent battles: Neonode, an  optical
>
> touchscreen tech company based in Sweden, says that it has been granted a patent in the
>
> U.S. that covers the touch-and-glide gesture that it claims is used on devices like the
>
> iPhone and iPad.
>
> The patent is notable not only because Neonode says the patent covers functions like the
>
> horizontal touch gesture that Apple uses between screens on its iOS devices, as well as in
>
> the slide-to-unlock feature. But also because slide-to-unlock is the same feature that
>
> Apple has been citing in its own patent lawsuits against Android device makers Motorola
>
> and Samsung.

*Id.*  The article identified the patent by number – "number 8,095,879 from the U.S. Patent and

Trademark Office" – and stated:  "We have contacted Apple for its response to this and will

update the story as we learn more." *Id*.  On information and belief, Apple became aware of this article shortly after it was published.

22.    On or about February 28, 2012, an article entitled "Swedish company claims rights to 'slide to unlock' with new UI patent" was published in the online journal "appleinsider,"

https://appleinsider.com/articles/12/02/28/swedish_company_claims_rights_to_slide_to_unlock_with_new_ui_patent.  The article stated, among other things, that "Neonode says it was issued U.S. Patent No. 8,095,879 which covers gesture-based interaction with a touch sensitive surface, a description that is similar to Apple's "slide to unlock" patent," and that:

> Apple is supposedly the first target for Neonode, though Shain said the company is
>
> looking for "friendly licensing" deals before pursuing patent infringement lawsuits.

*Id*.  On information and belief, the person referenced above was Joseph Shain, Neonode Inc.'s Vice President of Intellectual Property.  The article included images of Figures 10-12 from the '879 Patent.  On information and belief, Apple became aware of this article shortly after it was published.

23.    On March 19, 2012, Mr. Shain, as well as Bjorn Thomas Eriksson, CEO of Neonode Technologies AB and Neonode Inc., were deposed by counsel for Apple and Motorola Mobility, Inc. in the action entitled *Motorola Mobility, Inc. v. Apple, Inc.*, in the U.S District Court for the Southern District of Florida, Case No. 1:10cv023580-Civ-UU.  In the course of this deposition, the '879 Patent was marked as an exhibit, and counsel for both Apple and Motorola asked Mr. Shain numerous questions relating to the patent.

24.    On information and belief, Apple has known of the '993 Patent since shortly after it issued, on August 19, 2014.

25.     On or about July 8, 2013, Samsung filed "Samsung's Reduction of Invalidity References," Dkt. No. 671, in the *Apple v. Samsung* litigation.  Samsung's Reduction of Invalidity References identified "Neonode N1 Quickstart Guide V0.5" as a reference against Apple's "swipe to unlock" patent.

26.     After a 13-day trial in the *Apple v. Samsung* litigation, the jury found the asserted claims of Apple's "swipe to unlock" patent infringed and not invalid.  Samsung appealed the finding that the patent was not invalid.  In an opinion issued on or about February 26, 2016, the Federal Circuit held that Apple's "swipe to unlock" patent would have been obvious over a combination that included the Neonode N1 Quickstart Guide.  In a second opinion issued on or about October 7, 2016, the Federal Circuit, sitting en banc, held that there was substantial evidence to support the jury's finding that Apple's "swipe to unlock" patent was not obvious over the cited combination, and affirmed and reinstated the district court judgment.

27.     On information and belief, to the extent that Apple was not already aware of the '993 Patent, Samsung's reliance on the Neonode N1 Quickstart Guide as a principal prior art reference over several years of litigation that included a jury trial, an appeal to the Federal Circuit and two issued Federal Circuit opinions on the merits, combined with Apple's knowledge of the '879 Patent – from which the '993 Patent descended as a continuation – from at least early 2012, caused Apple to become aware of the '993 Patent as a result of, inter alia, the work of Apple's counsel in connection with the *Apple v. Samsung* litigation.

28.     Apple was again made aware of the '879 and '993 Patents on or about May 13, 2017, when Mr. Shain informed Apple that Neonode Inc. had "a family of user interface patents that relate to Neonode's N2 smartphone and that have been identified in the industry as being pioneering, in particular US Patent Nos. 8095879, 8650510, 8812993, 9165654 and their

continuations," and inquired as to "whether Apple might be interested in acquiring the patent family."  Denise Kerstein, Head of Patent Acquisitions for Apple, requested that Mr. Shain send her a prospectus concerning the portfolio.  The next day, Mr. Shain emailed the prospectus to Ms. Kerstein.  The prospectus included, among other things, a citation analysis showing that the '879 Patent had been cited by Apple in Apple's own patent prosecution efforts more than 30 times, and illustrated what Neonode Inc. contended were 11 usage scenarios under the '879 Patent and six usage scenarios under the '993 Patent.

29.     Ms. Kerstein and Mr. Shain discussed the Neonode Inc. patents on May 15, 2017.

30.     On July 21, 2017, Elaine Wong, of the Patent Acquisitions group at Apple, informed Mr. Shain that Apple had decided "to pass on the opportunity."

## VI.     THE INFRINGING APPLE DEVICES

31.     **iPhone X and the Transition to Gestures**.  On September 12, 2017, Apple announced the impending release of the iPhone X.  Apple touted the iPhone X as "the future of the smartphone" in a press release, in large part due to the phone's "all-screen" design that eliminated the physical home button:

> "For more than a decade, our intention has been to create an iPhone that is all display. The iPhone X is the realization of that vision," said Jony Ive, Apple's chief design officer. "With the introduction of iPhone ten years ago, we revolutionized the mobile phone with Multi-Touch. iPhone X marks a new era for iPhone — one in which the device disappears into the experience."

https://www.apple.com/newsroom/2017/09/the-future-is-here-iphone-x/.  As part of this "revolutionary" advance, iOS 11 was "redesigned to take full advantage of the Super Retina display and replace[d] the Home button with fast and fluid gestures, allowing customers to naturally and intuitively navigate iPhone X."  Id.  For this new generation of iPhone, in order to

transition from the Lock Screen to the Home Screen, the user swiped up from the Home Bar at the bottom center of the display, which would transition the display directly to the Home Screen if Face ID was configured and enabled or to a passcode entry screen if it was not.  In order to transition from the Lock Screen to the Control Center, the user swiped down from a horizontal bar at the upper right corner:



32.     The iPhone X was released in the United States on November 3, 2017.  All subsequent models of the iPhone, as well as the third and fourth generation models of the iPad Pro, incorporated Apple's new "all display" design and the suite of interface gestures introduced in iOS 11, which were carried forward in iOS 12, iOS 13, and iPadOS.

33.    **Swipe Typing**.  On June 2, 2014, at its Worldwide Developer Conference, Apple announced that iOS 8 would add support for third party keyboard applications, allowing users to download such applications from the Apple App Store to their iPhones and replace the native Apple keyboard.  These applications included several that included code for enabling "swipe typing," i.e., the ability to enter text on a keyboard by gliding an object (such as the user's finger) across the keys on a keyboard rather than tapping each key individually.  On stage at its Developer Conference, Apple showcased Swype as an example in the slides presented to its audience, highlighting Swype's signature feature of quickly inputting text by dragging a finger across the screen:



https://www.youtube.com/watch?v=w87fOAG8fjk, at 1:32:10.

34.    iOS 8 was released in the United States on September 17, 2014.  In connection with the rollout of iOS 8, Apple specifically touted swipe typing as one the flagship

functionalities that would be enabled by third party keyboard applications, and began hosting and selling such third party keyboard applications on the Apple App Store:



https://www.apple.com/my/ios/whats-new/quicktype/.

35.     Swype quickly became the top paid-download application available in the Apple App Store.  One reviewer characterized the flood of downloads of the swipe typing application as a "stampede."  https://www.tomsguide.com/us/swype-ios8-keyboard,review-2398.html.

36.     With the release of iOS 13, on September 19, 2019, Apple introduced its own native swipe typing capability, which it branded "QuickPath."  The new functionality was lauded as a "great feature," https://appletoolbox.com/use-quickpath-ipados-keyboard-feature/, that would "change the way you type on your iPhone," https://www.cnet.com/how-to/how-to-use-the-iphones-new-slide-to-type-keyboard-in-ios-13/, adding a functionality that had "long been popular on Android devices," https://www.groovypost.com/howto/use-quickpath-updated-ios-keyboard/, such as smartphones offered by Samsung, Apple's main smartphone competitor in the United States market.

### COUNT I:     INFRINGEMENT OF THE '879 PATENT

37.     Neonode incorporates paragraphs 1 through 36 herein by reference.

38.     **Direct Infringement – Control Bar:**  Apple has been and is presently directly infringing at least claim 1 of the '879 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, Apple iPhone X, XR, XS, XS Max, 11, 11 Pro and 11 Pro Max devices, and iPad Pro third (2018) and fourth (2020) generation devices (collectively, "the Swipe to Open Devices").

39.     As one non-limiting example of the claims of the '879 Patent that are infringed by the Swipe to Open Devices, claim 1 of the '879 Patent recites:

> 1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
>     a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

40.     The Swipe to Open Devices are mobile handheld computer units, and include a memory storing code which, when read by a processor, allows the devices to present a user interface as outlined below.

41.     The Swipe to Open Devices include a display that is touch sensitive, in which one or more representations of functions may be displayed.  For example:



42.     In the display as set forth above, the short orange horizontal bar in the upper right corner of the display (the "Control Bar") is a representation of the function of opening the Control Center.  The Control Bar consists of only one option for activating the function, and the function is activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the Control Bar and (ii) gliding along the display away from the touched location.  The Control Bar is not relocated or duplicated during the gliding.

43.     **Direct Infringement – QuickPath:**  Apple has been and is presently directly infringing at least claim 1 of the '879 Patent by making, using, selling, or offering for sale within the United States, and/or importing into the United States, mobile devices with the QuickPath swipe-typing functionality loaded onto the device, including at least the following devices:  (i) all iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad (7th generation), and iPad Pro (4th generation) devices, (ii) all iPhone XR, iPhone 8, iPhone 8 Plus, iPad Mini (5th generation), iPad Air (3rd generation) devices sold in or after September 2019 with iOS 13 or iPadOS loaded onto the device, and (iii) all Apple devices to which iOS 13 or iPadOS was downloaded from a server owned and/or operated by or at the direction of Apple (collectively, "the QuickPath Devices").

44.     Claim 1 of the '879 Patent, set forth above, is one non-limiting example of the claims of the '879 Patent that are infringed by the QuickPath Devices.

45.     The QuickPath Devices are mobile handheld computer units, and include a memory storing code which, when read by a processor, allows the devices to present a user interface as outlined below.

46.     The QuickPath Devices include a display that is touch sensitive, in which one or more representations of functions may be displayed.  For example:



47.     In the display as set forth above, each of the "key" icons of the virtual keyboard is a representation of a function, each of the keys consists of only one option for activating the function (i.e., one letter), and the function may be activated by a multi-step operation comprising (i) an object (such as a user's finger) touching the display at the location of the key and (ii) gliding along the display away from the touched location.  Keys are not relocated or duplicated during the gliding.

48.     **Direct Infringement – Third Party Keyboard Applications:**  Apple has been and is presently directly infringing at least claim 1 of the '879 Patent by making, within the United States, mobile devices that include code for enabling swipe typing functionality ("the

Swipe-Typing Keyboard App Devices"), by causing third party keyboard applications that include swipe-typing functionality (collectively, "Swipe-Typing Keyboard Apps") that are hosted on servers owned and/or operated by or at the direction of Apple to be downloaded to Apple devices.

49.     The Swipe-Typing Keyboard App Devices include at least the following devices, from and after any download to the device of a Swipe-Typing Keyboard App:  Apple iPhone 4S, iPhone 5, iPhone 5C, iPhone 5S, iPhone 6, iPhone 6 Plus, iPhone SE, iPhone 6s, iPhone 6s Plus, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad Air 2, iPad Air (3d generation), iPad mini 4, iPad mini (5th generation), iPad (5th, 6th, 7th generations), and iPad Pro (1st, 2nd, 3rd, 4th generations), and Apple Watch.

50.     Claim 1 of the '879 Patent, set forth above, is one non-limiting example of the claims of the '879 Patent that are infringed by the Swipe-Typing Devices.

51.     The Swipe-Typing Keyboard App Devices are mobile handheld computer units, and include a memory storing code which, when read by a processor, allows the devices to present a user interface as outlined below.

52.     The Swipe-Typing Keyboard App Devices include a display that is touch sensitive, in which one or more representations of functions may be displayed.  For example:





53.     In the display as set forth above, which displays the GBoard Swipe-Typing

Keyboard App, each of the "key" icons of the virtual keyboard is a representation of a function,

each of the keys consists of only one option for activating the function (i.e., one letter), and the

function may be activated by a multi-step operation comprising (i) an object (such as a user's

finger) touching the display at the location of the key and (ii) gliding along the display away

from the touched location.  Keys are not relocated or duplicated during the gliding.

54.     **Direct Infringement – Third Party Keyboard Applications:**  Apple has been

and is presently directly infringing at least claim 1 of the '879 Patent by selling and offering to

sell, within the United States, the Swipe-Typing Devices, as a single device consisting of two

components: the devices identified in paragraph 55 below, and the Swipe-Typing Keyboard Apps.

55.     Apple has sold and offered for sale, or is selling and offering for sale, within the United States all of the following devices: Apple iPhone 4S, iPhone 5, iPhone 5C, iPhone 5S, iPhone 6, iPhone 6 Plus, iPhone SE, iPhone 6s, iPhone 6s Plus, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad Air 2, iPad Air (3d generation), iPad mini 4, iPad mini (5th generation), iPad (5th, 6th, 7th generations), and iPad Pro (1st, 2nd, 3rd, 4th generations), and Apple Watch (collectively, when running iOS 8 or a later version of iOS, iPadOS or WatchOS, "the Swipe-Typing Keyboard App-Ready Devices").

56.     In addition, Apple has been and is presently selling and offering for sale through the Apple "App Store" Swipe-Typing Keyboard Apps for download to the Swipe-Typing Keyboard App-Ready Devices.

57.     On information and belief, Apple hosts the Swipe-Typing Keyboard Apps available in its App Store on servers owned and/or operated by or at the direction of Apple, and causes the download of such applications to the Swipe-Typing Keyboard App-Ready Devices to execute.

58.     On information and belief, Apple has the authority to enter into transactions with users of the Swipe-Typing Keyboard App-Ready Devices concerning Swipe-Typing Keyboard Apps that are hosted on Apple's App Store.  On information and belief, the developers of Swipe-Typing Keyboard Apps that are hosted on Apple's App Store have no discretion as to whether to reject, accept or confirm specific transactions with users of the Swipe-Typing Keyboard App-Ready Devices concerning Swipe-Typing Keyboard Apps.

59.     On information and belief, Apple controls the content displayed to a user on the Apple App Store, including the content displayed for each Swipe-Typing Keyboard App.

60.     For each of the Swipe-Typing Keyboard Apps that are or have been available for download from the Apple App Store, Apple displays on the App Store, among other things, the price of the application (which may include "GET," which indicates that the initial price of the application is $0), an icon enabling a user to obtain a download of the application by simply tapping the icon, one or more graphical depictions associated with the application, information concerning the application (including but not limited to a description of the application, user ratings of the application, a ranking of the application against other applications in its category, and a version history concerning the application).

61.     On information and belief, Apple enables download of Swipe-Typing Keyboard Apps that are or have been available for download from the Apple App Store only to the Swipe-Typing Keyboard App-Ready Devices.  On information and belief, Swipe-Typing Keyboard Apps are sold for use only with the Swipe-Typing Keyboard App-Ready Devices, as part of a system that includes the Apple device and the application.

62.     A user of any of the Swipe-Typing Keyboard App-Ready Devices may obtain a download of a Swipe-Typing Keyboard App by simply tapping an icon on a product page on the Apple App Store that states "GET" (indicating a price of $0) or another price.  On information and belief, upon the user tapping the icon, Apple executes a download of the application to the user's device, which executes code in the iOS operating system to cause the device to onboard the application and store in memory the code for the application transmitted from Apple.

63.     Following a user's tap on the price icon, in the event that a price is stated in a specific monetary amount, Apple obtains payment directly from the user.  For example, in more

recent models of the Swipe-Typing Keyboard App-Ready Devices, Apple instructs the user to, e.g., "Double Click [on a side button] to Pay," or to "Confirm with Side Button," with graphical representations and illustrations of the button the user is instructed to click.  At no point in the transaction does the user interact with the third party developer of the application; the user interacts solely with Apple in order to obtain the application.

64.     On information and belief, following execution of the download, Apple retains a record of the user's purchase of the application, such that if the user deletes the application and later views the display concerning the application on Apple's App Store, the price icon will be replaced by an icon resembling a cloud and a downward pointing arrow, suggesting that the user download the application.

65.     The content concerning Swipe-Typing Keyboard Apps that is displayed to a user on the Apple App Store suggests to the user that Apple is selling the application.  The content concerning Swipe-Typing Keyboard Apps that is displayed to a user on the Apple App Store suggests a willingness to enter into a bargain for the application, so made as to justify the user in understanding that his assent to the bargain is invited and will conclude it.

66.     The Swipe-Typing Keyboard App-Ready Devices were and are designed and configured so as to support Swipe-Typing Keyboard Apps.  Apple has promoted the sale of Swipe-Typing Keyboard Apps for the purpose of combining them with the Swipe-Typing Keyboard App-Ready Devices, including by displaying a Swipe-Typing Keyboard App in connection with iOS 8 at its Worldwide Developer Conference on June 2, 2014.

67.     On information and belief, Swipe-Typing Keyboard Apps that are displayed to a user on Apple's App Store are intended to be downloaded to the Swipe-Typing Keyboard App-Ready Devices in order to be operable, and are not operable if downloaded to a consumer device

that is not running iOS 8 or a later version of iOS, or an emulation thereof.  Swipe-Typing Keyboard Apps that are displayed to a user on Apple's App Store were designed specifically so as to function on Apple's iOS operating system.

68.     **Indirect Infringement  – Swipe Typing:**  Apple has been and is presently indirectly infringing at least claim 1 of the '879 Patent, including by (i) inducing users of Apple devices to make and use devices that infringe the '879 Patent, and (ii) contributing to infringement of the '879 Patent.

69.     Apple has induced and continues to induce infringement of the '879 Patent in at least two ways.  First, Apple has induced and continues to induce users of Apple devices to make and use products that infringe the '879 Patent by, among other things, (i) modifying Apple's iOS operating system, in iOS 8, to support third party keyboard applications, (ii) prompting and encouraging users of Apple iPhones and iPads to upgrade to iOS 8 and subsequent versions of iOS and iPadOS; (iii) selling iPhones and iPads with iOS 8, and subsequent versions of iOS and iPadOS, loaded onto them; (iv) encouraging users of Apple iPhones to download third party keyboard applications, https://support.apple.com/ios/update, (v) hosting, offering for sale and selling Swipe-Typing Keyboard Apps, and (vi) encouraging users of Apple iPhones to use the swipe typing functionality enabled by Swipe-Typing Keyboard Apps.  Additional exemplary facts supporting the allegations in this paragraph are described and illustrated at paragraphs 33-35 above.

70.     All users of Apple iPhone, iPad and Apple Watch devices running iOS 8, or a subsequent version of iOS, iPadOS or WatchOS, to which a Swipe-Typing Keyboard App was downloaded have directly infringed the '879 Patent, at least by reason of the user making or using an infringing device.  Apple devices supporting iOS 8 and subsequent versions of iOS,

iPadOS and WatchOS include at least the following devices:  Apple iPhone 4S, iPhone 5, iPhone 5C, iPhone 5S, iPhone 6, iPhone 6 Plus, iPhone SE, iPhone 6s, iPhone 6s Plus, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad Air 2, iPad Air (3d generation), iPad mini 4, iPad mini (5th generation), iPad (5th, 6th, 7th generations), and iPad Pro (1st, 2nd, 3rd, 4th generations), and Apple Watch.

71.     Users of such devices have committed and continue to commit additional acts of direct infringement by way of their past and ongoing use of the swipe typing functionality enabled by such third party keyboard applications.

72.     Second, Apple has induced and continues to induce users of Apple devices to make and use products that infringe the '879 Patent by, among other things, (i) prompting users of Apple iPhones and iPads to upgrade to iOS 13 and iPadOS, which include the QuickPath functionality, (ii) encouraging users of Apple iPhones and iPads to upgrade to iOS 13 and iPadOS, https://support.apple.com/ios/update, and (iii) encouraging users of Apple iPhones and iPads on which iOS 13 or iPadOS is running to use the QuickPath functionality.

73.     For example, at https://www.apple.com/ios/ios-13/, Apple touts the benefits of iOS 13 by pointing to the QuickPath functionality, and encourages iPhone users to use the QuickPath functionality:



When a viewer of the webpage clicks the "plus" sign located in the lower right corner of the panel, the following text appears:



74.     Similarly, at https://www.apple.com/ipados/, Apple touts the benefits of iPadOS by pointing to the QuickPath functionality, and encourages iPhone users to use the QuickPath functionality:



When a viewer of the webpage clicks the "plus" sign located in the lower right corner of the panel, text materially identical to that shown in paragraph 73 above appears.

74. By way of another example, after downloading iOS 13 to an Apple iPhone, the user is presented with an alert informing her that she can now swipe across the keyboard to type. The user is also presented with a series of "tips" at "What's New in iOS 13," one of which provides users instructions concerning how to use the QuickPath functionality:



76.     By way of another example, even months after beginning to use a Directly Infringing Apple Device or Indirectly Infringing Apple Device, the infringing devices will display a "tip" suggesting that the user learn how to use the QuickPath functionality:



77.     Users of Apple iPhone and iPad devices running iOS 13 or a subsequent version of iOS or iPadOS directly infringe the '879 Patent, at least by reason of the user using an infringing device or making an infringing device by upgrading her Apple device to iOS 13 or iPadOS or to a subsequent version of iOS or iPadOS.  Apple devices supporting iOS 13 and subsequent versions of iOS and iPadOS include at least the following devices:  Apple iPhone SE, iPhone 6s Plus, iPhone 6s, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPad Air 2, iPad Air (3d generation), iPad mini 4, iPad mini (5th generation), iPad (5th, 6th, 7th generations), and iPad Pro (1st, 2nd, 3rd, 4th generations).

78.     Users of Apple iPhone and iPad devices running iOS 13 or a subsequent version of iOS or iPadOS have committed and continue to commit additional acts of direct infringement by way of their past and ongoing use of the QuickPath functionality.

79.     On information and belief, based on at least the facts alleged at paragraphs 17-30 above, Apple has known of the '879 Patent since at least February 22, 2012.

80.     On information and belief, Apple has intended, and does intend, that users of Apple devices upgrade their Apple devices to iOS 8 and later versions of iOS and iPadOS, download Swipe-Typing Keyboard Apps, and use the swipe typing functionality enabled by those Swipe-Typing Keyboard Apps.  Apple's intent that users of Apple devices download and use Swipe-Typing Keyboard Apps is reflected in the fact that at the June 2, 2014 Worldwide Developer Conference, Apple showcased Swype as an example in the slides presented to its audience and highlighted Swype's signature feature of quickly inputting text by dragging a finger across the screen.  Apple intended and does intend that users download and use Swipe-Typing Keyboard Apps for the reason, among others, that Apple derives revenue from those downloads.  On information and belief, Apple has known and knows that, or has acted and acts with willful blindness to the likelihood that, the acts of users of Apple devices in upgrading Apple devices to iOS 8 and later versions of iOS and iPadOS, and downloading Swipe-Typing Keyboard Apps to those devices and using the swipe typing functionality enabled by those Swipe-Typing Keyboard Apps, constitute infringement of the '879 Patent.

81.     On information and belief, Apple has intended, and does intend, that users of Apple devices upgrade their Apple devices to iOS 13 and iPadOS and use the QuickPath functionality.  On information and belief, Apple has known and knows that, or has acted and acts with willful blindness to the likelihood that, the acts of users of Apple devices in upgrading

Apple devices to iOS 13 and iPadOS and later versions of iOS 13 and iPadOS, and using the QuickPath swipe typing functionality, constitute infringement of the '879 Patent.

82.     On information and belief, Apple has supplied and does supply, and has caused and does cause to be supplied, (i) the Swipe-Typing Keyboard App-Ready Devices, and (ii) the Swipe-Typing Keyboard Apps, in or from the United States, such that they were uncombined when supplied, in such a manner as to actively induce their combination outside of the United States.  On information and belief, some or all of the Swipe-Typing Keyboard Apps were and are hosted on one or more servers owned and/or operated by or at the direction of Apple and located within the United States, and were and are downloaded to one or more Swipe-Typing Keyboard App-Ready Devices located outside of the United States.  On information and belief, Apple has intended, and does intend, that users of Swipe-Typing Keyboard App-Ready Devices download Swipe-Typing Keyboard Apps to their Apple devices.

83.     On information and belief, Apple has supplied and does supply, and has caused and does cause to be supplied, (i) Apple devices supporting iOS 13, iPadOS and later versions of iOS and iPadOS, and (ii) iOS, iPadOS and later versions of iOS and iPadOS, in or from the United States, such that they were uncombined when supplied, in such a manner as to actively induce their combination outside of the United States.  On information and belief, iOS 13, iPadOS and later versions of iOS and iPadOS were and are hosted on one or more servers owned and/or operated by or at the direction of Apple and located within the United States, and were and are downloaded to Apple devices supporting iOS 13, iPadOS and later versions of iOS and iPadOS located outside of the United States.  On information and belief, Apple has intended, and does intend, that users of such devices download iOS 13, iPadOS and later versions of iOS and iPadOS to their Apple devices.

84.     In addition, Apple has contributed to and continues to contribute to infringement of the '879 Patent by, among other things, offering for sale and selling Swipe-Typing Keyboard Apps for download to Swipe-Typing Keyboard App-Ready Devices.  Such Swipe-Typing Keyboard Apps include code for providing swipe typing functionality, which constitutes a material part of the invention claimed in the '879 Patent.  On information and belief, Apple has known and knows that, or has acted and acts with willful blindness to the likelihood that, code for providing the swipe typing functionality was and is especially made or adapted for use in an infringement of the '879 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

85.     Apple has further contributed to and continues to contribute to infringement of the '879 Patent by, among other things, offering and providing iOS 13 and iPadOS to users of Apple devices that support those operating system updates.  iOS 13 and iPadOS include code for providing the QuickPath functionality, which constitutes a material part of the invention claimed in the '879 Patent.  On information and belief, Apple has known and knows that, or has acted and acts with willful blindness to the likelihood that, code for providing the QuickPath functionality was and is especially made or adapted for use in an infringement of the '879 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.

86.     On information and belief, Apple has supplied and does supply, and has caused and does cause to be supplied, the Swipe-Typing Keyboard Apps in or from the United States, such that the Swipe-Typing Keyboard Apps were uncombined with the Swipe-Typing Keyboard App-Ready Devices when supplied, knowing or willfully blind to the fact that the Swipe-Typing Keyboard Apps were and are especially made or especially adapted to be combined with the Swipe-Typing Keyboard App-Ready Devices.  On information and belief, some or all of the

Swipe-Typing Keyboard Apps were and are hosted on one or more servers owned and/or operated by or at the direction of Apple and located within the United States, and were and are downloaded to one or more Swipe-Typing Keyboard App-Ready Devices located outside of the United States. The Swipe-Typing Keyboard Apps are not staple articles or commodities of commerce suitable for substantial noninfringing use. On information and belief, Apple has intended, and does intend, that users of the Swipe-Typing Keyboard App-Ready Devices download Swipe-Typing Keyboard Apps to their Apple devices.

87.     On information and belief, Apple has supplied and does supply, and has caused and does cause to be supplied, iOS, iPadOS and later versions of iOS and iPadOS in or from the United States, such that iOS, iPadOS and later versions of iOS and iPadOS were uncombined with an Apple device supporting iOS 13, iPadOS and later versions of iOS and iPadOS when supplied, knowing or willfully blind to the fact that iOS 13, iPadOS and later versions of iOS and iPadOS were and are especially made or especially adapted to be combined with Apple devices supporting iOS 13, iPadOS and later versions of iOS and iPadOS. On information and belief, some or all of iOS 13, iPadOS and later versions of iOS and iPadOS were and are hosted on one or more servers owned and/or operated by or at the direction of Apple and located within the United States, and were and are downloaded to one or more Apple devices supporting iOS 13, iPadOS and later versions of iOS and iPadOS located outside of the United States. iOS 13, iPadOS and later versions of iOS and iPadOS are not staple articles or commodities of commerce suitable for substantial noninfringing use. On information and belief, Apple has intended, and does intend, that users of Apple devices supporting iOS 13, iPadOS and later versions of iOS and iPadOS download iOS 13, iPadOS and later versions of iOS and iPadOS to their Apple devices.

88.     Apple has never been, and is not now, licensed under the '879 Patent, and has never been authorized by any owner of the '879 Patent to engage in the acts alleged herein.

89.     Apple's infringement of the '879 Patent has been and continues to be willful.  On information and belief, based on at least the facts alleged at paragraphs 17-30 above, Apple has known of the '879 Patent since at least February 22, 2012.  Apple is a large corporation with a large and experienced legal department and highly sophisticated in-house and outside intellectual property counsel.  Apple knew or should have known that its conduct in making, using, selling, offering for sale, and/or importing the Apple products identified above and inducing and contributing to direct infringement in connection with those products as alleged above has infringed and does infringe the '879 Patent, yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing.

90.     The '879 Patent is not invalid and is enforceable.

91.     Neonode has sustained significant damages as a direct and proximate result of Apple's infringement of the '879 Patent.

**COUNT II:   INFRINGEMENT OF THE '993 PATENT**

92.     Neonode incorporates paragraphs 1 through 91 herein by reference.

93.     **Direct Infringement:**  Apple has been and is presently directly infringing at least claim 1 of the '993 Patent by making, using, selling, or offering for sale the Apple iPhone X, XR, XS, XS Max, 11, 11 Pro and 11 Pro Max devices, and iPad Pro third (2018) and fourth (2020) generation devices (collectively, "the Swipe to Open Devices").

94.     As one non-limiting example of the claims of the '993 Patent that are infringed by the Swipe to Open Devices, claim 1 of the '993 Patent recites:

> 1. A non-transitory computer readable medium storing instructions, which, when executed by a processor of an electronic device having a touch-sensitive display screen, cause the processor to enable a user interface of the device, the user interface comprising at least two states, namely, (a) a tap-present state, wherein a plurality of tap-activatable icons for a respective plurality of pre-designated system functions are present, each system function being activated in response to a tap on its respective icon, and (b) a tap-absent state, wherein tap-activatable icons are absent but an otherwise-activatable graphic is present in a strip along at least one edge of the display screen for transitioning the user interface from the tap-absent state to the tap-present state in response to a multi-step user gesture comprising (i) an object touching the display screen within the strip, and (ii) the object gliding on the display screen away from and out of the strip.

95.    The Swipe to Open Devices are electronic devices having a touch sensitive display screen and include a memory storing code which, when executed by a processor, causes the processor to present a user interface as outlined below.

96.    The user interface of the Swipe to Open Devices includes multiple tap-present states, in which a plurality of tap-activatable icons for a plurality of pre-designated system functions are present, each system function of which is activated in response to a tap on its respective icon, including at least the following.

97.    The Control Center interface of the Swipe to Open Devices includes tap-activatable icons for a plurality of pre-designated system functions, such as a flashlight function, a clock function, a calculator function and a camera function.  For example, the Control Center interface on an iPhone 11 running iOS 13 presents multiple such tap-activatable icons:



98.     Similarly, the Home Screen interface includes tap-activatable icons for a plurality of pre-designated system functions.  For example, the Home Screen interface on an iPhone 11 running iOS 13 presents multiple such tap-activatable icons::



99.    The user interface of the Swipe to Open Devices includes a Lock Screen in which tap-activatable icons are absent, but in which at least two otherwise-activatable graphics are present, including (i) a horizontal bar in the upper right corner of the display, and (ii) a horizontal bar (the "Home Bar") in the lower center of the display.  For example, the Lock Screen interface on an iPhone 11 running iOS 13 presents multiple such otherwise-activatable graphics:



Neither the flashlight icon in the lower left, nor the camera icon in the lower right, of the Lock Screen is tap-activatable.

100.    The interface of the Swipe to Open Devices transitions from the Lock Screen to the Control Center if the user touches the Control Bar graphic in the upper right corner of the display and glides downward on the display.

101.    If Face ID is enabled for "iPhone Unlock" or "iPad Unlock," the interface of the Swipe to Open Devices transitions from the Lock Screen to the Home Screen if the user touches the Home Bar graphic in the lower center of the display and glides upward on the display.

102.   **Indirect Infringement:**  Apple has been and is presently indirectly infringing at least claim 1 of the '993 Patent, including by inducing users of Apple devices to use devices that infringe the '993 Patent.

103.   Apple has induced and continues to induce infringement of the '993 Patent in at least the following way.  Apple has induced and continues to induce users of Apple devices to use products that infringe the '993 Patent by, among other things, prompting and encouraging users of Apple iPhones and iPads to enable Face ID for "iPhone Unlock" or "iPad Unlock," and to unlock their iPhones and iPads with Face ID by "swip[ing] up from the bottom of the screen to unlock."  The following screenshots from Apple's website, at https://support.apple.com/en-us/HT208109, provide detailed instructions to iPhone and iPad users concerning how to enable Face ID and unlock their iPhones and iPads with Face ID, including an active graphic that illustrates the sequence of actions involved in unlocking an iPhone with Face ID:



## Unlock your iPhone or iPad with Face ID

After you set up Face ID, you can use it to unlock your iPhone or iPad. Here's how:



1. Raise to wake or tap to wake your iPhone or iPad.

2. If you're using an iPhone, hold it in portrait orientation, then glance at it. On iPad, you can hold it in either portrait or landscape orientation. If it's in landscape orientation, make sure that your finger isn't covering the TrueDepth camera. Then glance at the screen.

3. When the lock icon on your screen animates from closed to open, swipe up from the bottom of the screen to unlock.

To turn this feature on or off, go to Settings > Face ID & Passcode, then tap iPhone Unlock or iPad Unlock.



## Unlock your iPhone or iPad with Face ID

After you set up Face ID, you can use it to unlock your iPhone or iPad. Here's how:



1. Raise to wake or tap to wake your iPhone or iPad.

2. If you're using an iPhone, hold it in portrait orientation, then glance at it. On iPad, you can hold it in either portrait or landscape orientation. If it's in landscape orientation, make sure that your finger isn't covering the TrueDepth camera. Then glance at the screen.

3. When the lock icon on your screen animates from closed to open, swipe up from the bottom of the screen to unlock.

To turn this feature on or off, go to Settings > Face ID & Passcode, then tap iPhone Unlock or iPad Unlock.



104.    Users of the Swipe to Open Devices have committed and continue to commit acts of direct infringement by way of their past and ongoing use of the devices to perform the functionality alleged above.

105.    On information and belief, based on at least the facts alleged at paragraphs 17-30 above, Apple has known of the '993 Patent since shortly after it issued on August 19, 2014.

106.    On information and belief, Apple has intended, and does intend, that users of the Swipe to Open Devices use the devices as alleged above.  On information and belief, Apple has known and knows that, or has acted and acts with willful blindness to the likelihood that, the acts of users of Apple devices in using the devices as alleged above constitutes infringement of the '993 Patent.

107.    Apple has never been, and is not now, licensed under the '993 Patent, and has never been authorized by any owner of the '993 Patent to engage in the acts alleged herein.

108.    Apple's infringement of the '993 Patent has been and continues to be willful.  On information and belief, Apple has known of the '993 Patent since shortly after it issued, on August 19, 2014.  Apple is a large corporation with a large and experienced legal department and highly sophisticated intellectual property counsel.  Apple knew or should have known that its conduct in making, using, selling, offering for sale, and/or importing the Swipe to Open Devices and inducing and contributing to direct infringement in connection with the Swipe to Open Devices has infringed and does infringe the '993 Patent, yet proceeded to engage in such conduct despite a high likelihood that a court would find the products to be infringing.

109.    The '993 Patent is not invalid and is enforceable.

110.    Neonode has sustained significant damages as a direct and proximate result of Apple's infringement of the '993 Patent.

### DEMAND FOR JURY TRIAL

111.    Neonode demands a trial by jury of all issues triable of right before a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Neonode respectfully requests that the Court enter judgment as follows:

A.    That Apple has infringed and continues to infringe the '879 Patent and the '993 Patent;

B.    Awarding Neonode damages adequate to compensate it for Apple's infringement of the '879 Patent and the '993 Patent, in an amount to be determined at trial, but in no event less than a reasonable royalty for the use made of the claimed inventions by them;

C.    Awarding a preliminary and permanent injunction restraining and enjoining Apple, and its officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them who receive actual notice of the order by personal service or

otherwise, from any further manufacture, use, sales, offers to sell, or importations of any and all of the products and services identified above;

D.      Trebling all damages awarded to Neonode under the '879 Patent and the '993 Patent;

E.      Finding this case exceptional and awarding Neonode its reasonable attorneys' fees and non-taxable costs incurred in prosecuting its claims;

F.      Awarding Neonode pre-judgment and post-judgment interest at the maximum rate permitted by law;

G.      Awarding Neonode its taxable costs;

H.      Such further and additional relief as the Court determines to be just and proper.

DATED:  June 08, 2020                    Respectfully submitted,


                                         By: */s/ Craig D. Cherry*_____
                                         Craig D. Cherry
                                         State Bar No. 24012419
                                         ccherry@haleyolson.com
                                         Justin W. Allen
                                         State Bar No. 24081977
                                         jallen@haleyolson.com
                                         **HALEY & OLSON, P.C.**
                                         100 N. Ritchie Road, Suite 200
                                         Waco, Texas 76712
                                         913 Franklin Ave., Suite 201
                                         Waco, Texas 76701
                                         Telephone: (254) 776-3336
                                         Facsimile: (254) 776-6823

                                         Philip J. Graves (CA State Bar No. 153441) (pro
                                         hac vice pending)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         301 North Lake Avenue, Suite 920
                                         Pasadena, CA 91101
                                         Telephone: (213) 330-7147
                                         Facsimile: (213) 330-7152
                                         Email: philipg@hbsslaw.com

                                         Greer N. Shaw (CA State Bar No. 197960) (pro hac
                                         vice pending)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         301 North Lake Avenue, Suite 920
                                         Pasadena, CA 91101
                                         Telephone: (213) 330-7150
                                         Facsimile: (213) 330-7152
                                         Email: greers@hbsslaw.com

                                         *Counsel for Plaintiff Neonode Smartphone LLC*