PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## WACO DIVISION

| | |
|---|---|
| NEONODE SMARTPHONE LLC, | |
| Plaintiff, | Civil Action No. 6:20-cv-00505-ADA |
| v. | |
| APPLE INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**



# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  ARGUMENT .......................................................................................................... 2

   A. The Private Interest Factors Do Not Favor Transfer. ......................................... 3

     1.   The Relative Ease of Access to Sources of Proof. ......................................... 3

     2.   The Availability of Compulsory Process. ...................................................... 5

     3.   The Cost of Attendance for Willing Witnesses. ............................................ 7

     4.   Other Factors That Make Trial Easy, Expeditious, and Inexpensive. ........................ 10

   B. The Public Interest Factors Do Not Favor Transfer............................................ 12

     1.   Administrative Difficulties Flowing From Court Congestion. ................................... 12

     2.   Local Interest In Having Localized Interests Decided At Home. .............................. 13

     3.   The Familiarity Of The Forum With The Law That Will Govern The Case And The Avoidance Of Unnecessary Problems Of Conflict Of Laws Or The Application Of Foreign Law. ................................................................................................. 15

   C. Other Considerations Counsel Against Transfer. .............................................. 15

III. CONCLUSION........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
   358 F.3d 337 (5th Cir. 2004) ..................................................................................................... 2

*ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*,
   2010 WL 1170976 (W.D. Tex. Mar. 23, 2010) .......................................................................... 6

*Aerielle, Inc. v. Monster Cable Prods., Inc.*,
   2007 WL 951639 (E.D. Tex. Mar. 26, 2007) ........................................................................... 10

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
   2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ........................................................................... 3

*Bevil v. Smit Ams., Inc.*,
   883 F. Supp. 168 (S.D. Tex. 1995) ........................................................................................... 6

*C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*,
   2019 WL 3017379 (E.D. Tex. July 10, 2019) ....................................................................... 3, 5

*Continental Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960) ................................................................................................................ 1, 10

*Fintiv, Inc. v. Apple Inc.*,
   2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) .................................................................... 7, 15

*Foundation Med., Inc. v. Guardant Health, Inc.*,
   2017 WL 590297 (E.D. Tex. Feb. 14, 2017) ........................................................................... 12

*Gardipee v. Petroleum Helicopters, Inc.*,
   49 F. Supp. 2d 925 (E.D. Tex. 1999) ........................................................................................ 3

*Hammond Dev. Int'l, Inc. v. Google LLC*,
   2020 WL 3452987 (W.D. Tex. June 24, 2020) ........................................................................ 13

*Ikorongo Texas LLC v. Lyft, Inc.*,
   20-cv-00258-ADA, slip op. (W.D. Tex. Mar. 1, 2021) ..................................................... passim

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ..................................................................................... 7, 10, 13

*In re Google Inc.*,
   2017 WL 977038 (Fed. Cir. Feb 23, 2017) ............................................................................. 10

*In re Nitro Fluids L.L.C.*,
   978 F.3d 1308 (Fed. Cir. 2020) ................................................................................................. 3

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ..................................................................................... 2, 11, 12

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................................................. 2, 7

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................................................. passim

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) ........................................................................ 11

*LBS Innov'ns LLC v. Apple Inc.*,
  2020 WL 923887 (E.D. Tex. Feb. 26, 2020) ................................................. 4, 13

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
  2019 WL 6344470 (E.D. Tex. Nov. 27, 2019) ................................................... 5

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) .............................................................................................. 2

*Stingray Music USA, Inc. v. Music Choice*,
  2017 WL 1022741 (E.D. Tex. Mar. 16, 2017) ............................................... 4, 15

*SynKloud Techs., LLC v. Dropbox, Inc.*, 2020
  WL 2528545 (W.D. Tex. May 18, 2020) ................................................... passim

*TIGI Linea Corp. v. Prof. Prods. Grp., LLC*,
  2020 WL 7346211 (E.D. Tex. Nov. 13, 2020) ............................................... 4, 5

*Turner v. Cincinnati Ins. Co.*,
  2020 WL 210809 (W.D. Tex. Jan. 14, 2020) ..................................................... 8

*Ultravision Techs., LLC v. Govision, LLC*,
  2020 WL 896767 (E.D. Tex. Jan. 21, 2020) ................................................... 3, 4

*Voxer, Inc. v. Facebook, Inc.*,
  2020 WL 3416012 (W.D. Tex. June 6, 2020) ............................................... 13, 15

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
  2018 WL 4620636 (E.D. Tex. May 22, 2018) ..................................................... 3

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................... 2

**Treatises**

15 Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 3851 (3d ed. 2007) ............... 6


PUBLIC VERSION

## I.     **INTRODUCTION**

The Court should deny Apple Inc.'s ("Apple's") motion to transfer this case from the Western District of Texas ("WDTX") to the Northern District of California ("NDCA"). Apple must show "good cause" by demonstrating that NDCA is a "clearly more convenient" venue as a whole. It is not enough that NDCA would be more convenient for Apple. The transfer decision is discretionary, informed by consideration of public and private interest favors set forth in the Fifth Circuit's *Volkswagen* decision. If, when added together, the factors do not clearly lean in favor of the transferee venue, the Court should deny transfer.

Here, the factors are either neutral or they disfavor transfer. Perhaps the strongest reason to deny transfer is that this Court is handling a co-pending case against Samsung involving the same patents, very similar accused products, and overlapping issues. That action weighs heavily against transfer, because "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Also weighing against transfer is that NDCA's docket is materially more congested than WDTX's and this case would reach trial much more quickly if it remained in WDTX. In addition, Neonode Smartphone LLC ("Neonode") has no witnesses located in NDCA, Neonode's witnesses are willing to come to WDTX, pertinent Apple employees are in WDTX, Apple has identified no unwilling third party witnesses in NDCA, and both parties' documents are accessible in WDTX. Other than speculative COVID-related concerns about travel, Apple has admitted that there would be no evidence unavailable to it if the case were to remain in WDTX. Finally, Apple has previously asserted patent infringement claims in Texas, revealing that Apple's "convenience" arguments are opportunistic and insincere. For these and other reasons, discussed further below, the Court should deny Apple's transfer motion.


## II.   <u>ARGUMENT</u>

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). The "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The party seeking transfer must show good cause. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (*Volkswagen II*). That means Apple must establish that NDCA is "clearly more convenient" than WDTX as a venue for this litigation. *Id. at* 315.

In applying the private and public interest factors, the Court enjoys discretion and assesses the case "on an 'individualized, case-by-case consideration of convenience and fairness.'" *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (citation omitted). "If, when added together, the relevant private and public interest factors are in equilibrium, or even if they do not clearly lean in favor of the transferee venue, the motion must be denied." *Ikorongo Texas LLC v. Lyft,*

*Inc.*, 20-cv-00258-ADA, slip op. at 6 (W.D. Tex. Mar. 1, 2021); *see also In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311 (Fed. Cir. 2020). Transfer of venue "must render the litigation more convenient as a whole and not merely shift inconvenience between the parties." *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 2016 WL 6909479, at *3 (W.D. Tex. Jan. 28, 2016); *see also Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp. 2d 925, 931 at n.6 (E.D. Tex. 1999). In adjudicating Apple's motion, the Court may "consider undisputed facts outside of the pleadings … but it must draw all reasonable inferences and resolve all factual conflicts in favor of" Neonode. *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018).

### A.      The Private Interest Factors Do Not Favor Transfer.

### 1.      The Relative Ease of Access to Sources of Proof.

The Court looks to where documents and physical evidence are stored when considering this factor. *Volkswagen II*, 545 F.3d at 316. "For this factor to support transfer, '[p]arties must specifically identify the relevant sources of proof (and why they are relevant), and specifically identify the physical location of those sources of proof.' 'Without doing so, no court is able to make an informed inquiry into the true convenience of the parties.'" *Ultravision Techs., LLC v. Govision, LLC*, 2020 WL 896767, at *8 (E.D. Tex. Jan. 21, 2020) (citations omitted); *see also C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, 2019 WL 3017379, at *5 (E.D. Tex. July 10, 2019). Here, Apple relies upon conclusory statements of its declarant, Mr. Rollins, regarding the types and locations of its documents. [Dkt. 27-3, ¶¶ 7, 13, 17] In response to Neonode's interrogatories asking for specifics, Apple provided none. [Ex. 2 at 31-32, 34-35, 37-39, 40-41] Neonode also asked Apple to specify the "the relevant source code associated with the Accused Features" as referenced in Mr. Rollins' declaration, but Apple again provided no specifics. [*Id.* at 35-36] Absent the required specifics, the Court can make neither an informed inquiry into the true convenience

of the parties, *Ultravision Techs.*, 2020 WL 896767, at *8, nor an informed determination that the "ease of access" factor favors transfer.

Moreover, although the Fifth Circuit has held that "advances in copying technology and information storage" do not render the "ease of access" factor "superfluous," *Volkswagen II*, 545 F.3d at 316, "that authority does not preclude this Court from diminishing the importance of this factor in the overall transfer analysis, especially where … the movant has identified no sources of proof that cannot be transferred electronically." *Stingray Music USA, Inc. v. Music Choice*, 2017 WL 1022741, at *3 (E.D. Tex. Mar. 16, 2017); *accord TIGI Linea Corp. v. Prof. Prods. Grp., LLC*, 2020 WL 7346211, at *3 (E.D. Tex. Nov. 13, 2020); *LBS Innov'ns LLC v. Apple Inc.*, 2020 WL 923887, at *5 (E.D. Tex. Feb. 26, 2020). As the Court has noted, "there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic." *Ikorongo*, 20-cv-00258, slip op. at 8 n.2.

Here, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ Apple likely has relevant documents in WDTX given that, as discussed below, there are Apple employees in WDTX whose work pertains to this case. Although Neonode's sources of documentary evidence are outside the United States, those documents are stored electronically and are generally accessible here.[1] █████████████████████████████████████████ ███████████████████████████████████████████████████████████

██████████ When neither the plaintiff's nor the defendants' sources of proof are located in plaintiff's chosen forum, such that transfer for the convenience of defendant would "raise a commensurate

---

[1] [Ex. 4 at 7-11; Ex. 7, ¶ 2; Ex. 11, ¶ 2; Ex. 13, ¶ 2; Ex. 14, ¶ 2; Ex. 18 at 15:13-18, 21:15-22:11, 39:10-42:9, 46:2-47:5, 48:3-13, 49:21-50:8, 96:25-97:12, 112:11-113:12, 124:17-125:5; Ex. 19 at 11:13-15:5, 40:2-41:22, 46:21-47:22, 52:3-22, 54:13-17, 70:19-71:18, 77:8-14, 95:23-96:18, 134:1-135:4]

inconvenience" for plaintiff, courts have found that the "ease of access" factor "weighs against transfer." *Rembrandt Wireless Techs., LP v. Apple Inc.*, 2019 WL 6344470, at *2 (E.D. Tex. Nov. 27, 2019). Other courts have found the factor to be neutral when, as here, the evidence is dispersed and can be transferred electronically. *See TIGI Linea*, 2020 WL 7346211, at *4. Either way, Apple has not shown that the "ease of access" factor favors transfer.

### 2.    The Availability of Compulsory Process.

"This factor is directed towards unwilling third-party witnesses." *C&J Spec Rent Servs.*, 2019 WL 3017379, at *3. The Court considers the availability of compulsory process to secure the attendance of such witnesses. *Volkswagen II*, 545 F.3d at 316. "When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor" and may find it "neutral." *Ikorongo*, 20-cv-00258, slip op. at 10.

Apple has not shown that this factor favors transfer. Apple points to Aequitas Technologies LLC ("Aequitas"), Neonode Inc., and Soquel Group as "relevant third party witnesses … located in California." [Dkt. #27 at 5-6] But none of the pertinent personnel associated with these entities works or resides in NDCA.[2] All but one reside outside of the United States. The exception is Anuj Arora, Aequitas' Director of Engineering, who works and resides in Torrance, California, which is in the Central District of California ("CDCA"). Mr. Arora is willing to travel to WDTX for the case. [Ex. 11, ¶ 4] The "compulsory process" factor does not support transfer when, as here, non-party witnesses are willing to travel to the transferor district. *SynKloud Techs., LLC v. Dropbox, Inc.*, 2020 WL 2528545, at *5 (W.D. Tex. May 18, 2020).

---

[2] [Ex. 4 at 3-7; Ex. 7, ¶ 1; Ex. 11, ¶ 1; Ex. 13, ¶ 1; Ex. 14, ¶ 1; Ex. 15, ¶ 1; Ex. 18 at 8:18-9:12, 35:16-39:9, 38:14-39:15; 47:8-48:2; 48:14-20; 51:7-53:21; 57:12-59:8, 60:2-75:9, 82:7-96:23, 101:7-107:16, 115:14-125:5; Ex. 19 at 19:11-20:15, 27:2-32:14, 34:1-15, 35:5-21, 39:22-40:8, 41:19-41:24, 42:20-43:13, 47:23-59:12, 60:5-8, 62:13-63:13, 67:6-68:16, 74:4-103:1, 108:4-116:21, 117:2-7, 117:12-123:20, 136:8-16]

Apple next argues that, "[a]s the sole inventor of the patents-in-suit, Magnus Goertz is highly relevant to this case because of his unique knowledge of the invention story behind the patents-in-suit. … Mr. Goertz is located in Sweden." [Dkt. #27 at 6] Neither this Court nor NDCA has subpoena power over Mr. Goertz. Both parties have sought discovery from him via the Hague Convention. [Dkt. #44, 48]. The processes to obtain and use evidence from Mr. Goertz are the same in NDCA as compared to WDTX. Apple agrees that, if Mr. Goertz were to appear voluntarily for trial, WDTX would be "equally convenient" as NDCA. [Dkt. #27 at 6] Transferring the case to NDCA would not make obtaining evidence from Mr. Goertz more convenient for anyone.

Finally, Apple suggests that Neonode's claims might implicate third-parties Google, Inc. and Nuance Communications. [Dkt. #27 at 6] "A party seeking a transfer of venue must do more than make general allegations that key witnesses are unavailable or are inconveniently located." *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *3 (W.D. Tex. Mar. 23, 2010). "The movant must specifically identify the key witnesses and outline the substance of their testimony." *Bevil v. Smit Ams., Inc.*, 883 F. Supp. 168, 170 (S.D. Tex. 1995). "If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied." 15 Wright, A. Miller & E. Cooper, Fed. Prac. & Proc. § 3851 (3d ed. 2007). Here, Apple identifies no Google or Nuance witnesses. Apple neither outlines expected testimony nor provides sufficient information to permit the Court to determine how important any testimony will be. When asked what evidence would be unavailable to Apple in the event this case

remained in WDTX, Apple did not identify testimony from Google or Nuance witnesses.[3] [Ex. 3 at 101:23-104:10] Nor has Apple shown that such witnesses would be unwilling to appear in WDTX.

### 3.    The Cost of Attendance for Willing Witnesses.

To assist in analyzing this factor, the Fifth Circuit has adopted its "100-mile rule": "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The Federal Circuit has held, however, held that "the '100-mile' rule should not be rigidly applied" where "witnesses … will be required to travel a significant distance no matter where they testify." *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020). Apple argues that this factor "strongly favors transfer" because "all of the likely Apple witnesses, as well as many of the Neonode and third-party witnesses, are based in N.D. Cal." [Dkt. #27 at 11] This argument is meritless, for several reasons.

First, "the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial." *Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678, at *6 (W.D. Tex. Sept. 13, 2019). "Indeed, the Court assumes only a few party witnesses and even fewer non-party witnesses (if any) will testify at trial. Consequently, long lists of potential party and non-party witnesses do not affect the Court's analysis for this factor." *Ikorongo*, 20-cv-00258, slip op. at 11. Although Apple identifies ███████████████████████████████████████████████████ ██████████████████████████████████ it is likely that not all will testify at trial, whether the case is tried in WDTX or in NDCA.

---

[3] Apple's only testimony on this issue was that some of its employees might be reluctant to travel to WDTX in view of the COVID-19 pandemic. [Ex. 3 at 101:23-104:10] The Court recently considered this issue and found such arguments to be "speculative" and not material to the "witness convenience" analysis. *Ikorongo*, 20-cv-00258-ADA, slip op. at 11-12.

PUBLIC VERSION

Second, "[t]he convenience of party witnesses is typically given little weight because the witnesses' employer could compel their testimony at trial." *Ikorongo*, 20-cv-00258, slip op. at 12; *accord SynKloud*, 2020 WL 2528545, at *5; *see also Turner v. Cincinnati Ins. Co.*, 2020 WL 210809, at *4 (W.D. Tex. Jan. 14, 2020) ("[Defendant] cannot cite inconvenience of its employee-witnesses as the basis for transfer."). Although some Apple employees would travel to Texas for a trial absent transfer, ████████████████████████████████████████████████████ ████████████████████████. Apple has not shown that any "inconvenience" and "cost" would be materially greater than any other business travel for Apple.[4] Nor has it shown that any additional "cost" or "inconvenience" of litigating in WDTX, as compared to NDCA, would be material.

Third, at least one Apple employee located in WDTX will be a pertinent witness in this case. In particular, Ben Nielsen, an engineer who was involved in the development of pertinent aspects of the accused products, ██████████████.[5] Other Apple employees in Austin may also be pertinent:

- James Grimaldo, who "led launch programs for iPhone SE (2nd gen)," [Ex. 5; Ex. 3 at 107:7-108:13], may be knowledgeable about the functionalities that Apple's customers value in the iPhone SE (2nd gen) and other accused products.

- Braden Hess, who "managed launches" for the iPhone 12, iPhone 12 Pro, and iPad Pro, [Ex. 6; Ex. 3 at 108:15-109:18], may be knowledgeable about the functionalities that Apple's customers value in these and other accused products.[6]

---

[4] Apple is building a 192 room hotel in Austin, presumably for employee use. [Ex. 17]

[5] [Ex. 2 at 20, 29; Ex. 3 at 19:21-20:7; 34:2-36:9; 38:2-17; 64:11-19; 80:21-83:16; 98:21-99:7; 110:2-111:10; 118:1-120:4]

[6] Neonode's complaint, filed on June 8, 2020, does not specifically identify the iPhone 12 models as infringing devices because those models were not introduced until October 2020. *See* https://www.apple.com/newsroom/2020/10/apple-announces-iphone-12-and-iphone-12-mini-a-new-era-for-iphone-with-5g/ (last visited Mar. 23, 2020). However, Neonode's complaint

PUBLIC VERSION

- Julie Licata, Apple's "Americas iPad Supply Demand Manager" since March 2015 and, before that, Apple's "Americas iPhone Supply Demand Manager, [Ex. 8; Ex. 3 at 111:19-112:21], may have knowledge pertinent to quantifying a forward royalty for use of Neonode's '879 patent, among other topics.

- Rahul Menon, Apple's "Americas Supply and Demand" manager for iPhones since July 2015, and, before that, "Americas Supply and Demand" manager for iPads, [Ex. 9; Ex. 3 at 112:24-114:23], may have knowledge pertinent to quantifying a forward royalty for use of the '879 patent.

- Travis Owens, Apple's Engineering Manager for "Touch and Sensing Hardware" since September 2016, [Ex. 10; Ex. 3 at 115:2-120:10], may be knowledgeable about aspects of Apple's products that implicate Neonode's patents. In September 2017, Apple announced the iPhone X, which lacked a "home button" and incorporated greater use of a gesture-based touch screen interface. [Dkt. #1, ¶ 31-32]

- Scott Tagwerker served as Apple's iPhone supply demand manager from July 2015 to February 2020, [Ex. 12; Ex. 3 at 121:23-124:12], with responsibilities that included numerous accused products, including the iPhone XS/XS Max, 11 Pro/Pro Max, iPhone X/8/8+, iPhone 7, and iPhone 6s.

It would be more convenient and less costly for Mr. Nielsen and Apple's other Austin-based employees to testify in WDTX as compared to NDCA.

---

identifies "iPhone and iPad devices running iOS 13 or a subsequent version of iOS or iPadOS" as infringing products. *See* Dkt. #1, ¶ 77. Apple's iPhone 12 models run iOS 14, an iOS version subsequent to iOS 13. *See* https://www.apple.com/newsroom/2020/10/apple-announces-iphone-12-and-iphone-12-mini-a-new-era-for-iphone-with-5g/ (last visited Mar. 23, 2020).

Finally, no Neonode witnesses and no third-party witnesses whom Neonode currently expects to present are "based" in NDCA or reside there. Neonode's manager, Dooyong Lee, works and resides in South Korea. Persons involved in commercializing and monetizing the patented technology, including Joseph Shain and Ulf Mårtensson, work and reside in Sweden. The patent agent who prosecuted the patents-in-suit, Marc Berger, works and resides in Israel. Although Mr. Arora resides in Southern California, he, Mr. Lee, Mr. Shain, Mr. Mårtensson, and Mr. Berger are willing to travel to WDTX for the case.[7] When, as here, witnesses are willing to travel to the transferor district, the "convenience of witnesses" factor does not support transfer. *Aerielle, Inc. v. Monster Cable Prods., Inc.*, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007).

### 4. Other Factors That Make Trial Easy, Expeditious, and Inexpensive.

When considering a transfer motion, the Court considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. This factor includes "judicial economy benefits" that may result by granting or denying transfer. *E.g.*, *In re Apple*, 979 F.3d at 1344. Apple argues that "[t]his factor is neutral, as this case is still in its early stages." [Dkt. #27 at 13] Apple also argues that, "[a]lthough there is a related action in W.D. Tex. asserting the '879 and '993 patents, these are separate cases that have only been consolidated through the Markman hearing." [Dkt. #27 at 13] The Court should reject these meritless arguments.

Although considerations of judicial economy and the existence of co-pending litigation may not be dispositive, *see In re Google Inc.*, 2017 WL 977038, at *2 (Fed. Cir. Feb 23, 2017), "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent," *Cont'l Grain*, 364 U.S. at 26. "Judicial economy is served by

---

[7] [Ex. 7, ¶ 4; Ex. 11, ¶ 4; Ex. 13, ¶ 4; Ex. 14, ¶ 4; Ex. 15, ¶ 4]

having the same district court try … cases involving the same patents." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also In re Vistaprint*, 628 F.3d at 1346 (noting that "co-pending litigation before the trial court involving the same patent and underlying technology" provides "substantial justification" for denying transfer). Thus, "[a] parallel action in this District involving the same patent weighs heavily in the transfer analysis." *SynKloud*, 2020 WL 2528545, at *6. This is true regardless of whether the actions are in "early stages," because concerns about judicial economy, potentially inconsistent rulings, or expeditious litigation are prospective. *See Ikorongo*, 20-cv-00258, slip op. at 15.

Here, as in *SynKloud* and *Ikorongo*, "[t]hough this factor is not dispositive, judicial economy favors having the infringement of the same patent considered by one judge." *SynKloud*, 2020 WL 2528545, at *6. On the same day that Neonode sued Apple, it filed *Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd.*, No. 20-cv-00507-ADA (Jun. 8. 2020). The complaints against Apple and Samsung assert the same two patents and the accused products and functionality are very similar.[8] Both complaints allege that Apple and Samsung gained pre-suit knowledge of the patents in suit, and of their own infringement, as a result of a prior litigation in which Samsung cited Neonode's technology as prior art against an Apple patent. [Dkt. #1, ¶¶ 18-27; 20-cv-00507 Dkt. #1, ¶¶ 18-27] Thus, the two cases involve the same patents, similar accused products and functionality, and overlapping factual issues. Although Apple moved to transfer, Samsung did not. Samsung's case will remain in WDTX, as should Apple's.

---

[8] For example, Neonode's allegations against Apple for the '879 patent target "swipe typing" functionality enabled by Apple's QuickPath application. [Dkt. #1, ¶¶ 43-87] Neonode's allegations against Samsung similarly target "swipe typing" functionality. [20-cv-00507 Dkt. #1, ¶¶ 47-48] Neonode's allegations against both Apple and Samsung for the '993 patent target similar functionality that enables a user to transition the device from a tap-absent state to a tap-present state by swiping a displayed graphic. [Dkt. #1, ¶¶ 93-106; 20-cv-00507 Dkt. #1, ¶¶ 56-68]

Finally, as to Apple's assertion that the *Apple* and *Samsung* cases "have only been consolidated through the Markman hearing," the cases have in fact been coordinated all the way through at least the close of expert discovery, as reflected in the Amended Agreed Scheduling Orders entered in both cases. [Dkt. # 35; 20-cv-00507, Dkt. #35] The parties and the Court agreed to coordinate the pre-trial schedules in the two cases, recognizing inefficiencies that will result from litigating on separate tracks two cases involving the same patents and the same types of products. And, when the deadlines in this action's Amended Agreed Scheduling Order were vacated pending the resolution of Apple's transfer motion, the Court granted Samsung's request to stay the *Samsung* case in order to "[t]o promote efficiency." [20-cv-00507, Dkt. #36 at 1; Dec. 11, 2020 Text Order] Thus, everyone recognizes that having the same court try two cases that involve the same patents promotes judicial economy and expeditious litigation while minimizing potentially inconsistent rulings. *See Ikorongo*, 20-cv-00258, slip op. at 14. Samsung's case in WDTX "provides a substantial justification" for retaining Apple's case here. *In re Vistaprint*, 628 F.3d at 1346. Denying transfer would best promote judicial economy and expeditious litigation while avoiding inconsistent rulings. This weighs strongly against transfer.

**B.** **The Public Interest Factors Do Not Favor Transfer**

**1.** **Administrative Difficulties Flowing From Court Congestion.**

This factor "generally favors a district that can bring a case to trial faster." *Found. Med., Inc. v. Guardant Health, Inc.*, 2017 WL 590297, at *3 (E.D. Tex. Feb. 14, 2017). In a number of recent cases, the Court noted that its time-to-trial is 25% faster than NDCA's. *E.g.*, *Ikorongo*, 20-

cv-00258, slip op. at 17.[9] However, a particular court's "general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344.

Apple says Docket Navigator reports show that "[p]atent cases in N.D. Cal. have a slightly shorter time to trial than W.D. Tex. – since 2008, a median of 2.39 versus 2.59 years." [Dkt. #27 at 14] It is unknown how current this data is or what period it covers. The data for WDTX may overlook a faster time to trial in the Waco Division, which has an Order Governing Proceedings that ensures efficient administration of patent cases. Regardless, the difference is only about two months. Apple concedes that this "should not be assigned significant weight." [Dkt. #27 at 14]

According to the latest Federal Court Management Statistics, for the 12-month period ending September 30, 2020, the median time from filing to trial for a civil case was 20.4 months in WDTX and 44.5 months in NDCA.[10] [Ex. 16] WDTX had 602 pending cases per judge, compared to 870 in NDCA. [*Id.*] WDTX had 176 civil cases (4.8% of the total) over three years old, as compared to 925 (8.4% of the total) in NDCA. [*Id.*] This data indicates that NDCA's docket is more congested than WDTX's and that this case would get to trial faster in WDTX.

## 2. Local Interest In Having Localized Interests Decided At Home.

This factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1345 (emphasis in original). "The localized interest of a district exists when 'the cause of action calls into question the work and reputation of several individuals residing in or near that district who presumably conduct business in that

---

[9] *See also Hammond Dev. Int'l, Inc. v. Google LLC*, 2020 WL 3452987, at *5 (W.D. Tex. June 24, 2020); *Voxer, Inc. v. Facebook, Inc.*, 2020 WL 3416012, at *6 (W.D. Tex. June 6, 2020); *SynKloud*, 2020 WL 2528545, at *7; *Fintiv*, 2019 WL 4743678, at *7.

[10] The time-to-trial numbers cover all civil cases. The difference between WDTX and NDCA "would likely be … even greater … if the time-to-trial were narrowed to focus on patent cases." *LBS Innovations*, 2020 WL 923887 at *6.

community.'" *Ikorongo*, 20-cv-00258, slip op. at 18 (citation omitted). Apple argues that "this factor strongly favors transfer" because "Apple's corporate headquarters and the vast majority of its workforce are in N.D. Cal.—where the company was founded and where the likely Apple witnesses for this case are located." [Dkt. #27 at 15] But "a company's presence in a particular district weighs only slightly in favor of transfer because 'it is generally a fiction that patent cases give rise to local controversy or interest, particularly without record evidence suggesting otherwise.'" *Ikorongo*, 20-cv-00258, slip op. at 18 (citation omitted).

Apple has a significant presence in WDTX, including approximately 6,000 employees in the Austin area. [Ex. 2 at 43] Apple's non-retail facility supports various Apple business activities, including engineering, research and development, operations, finance, sales, and customer support. [*Id.* at 44] Apple has approximately 2,800 employees in roles relating to AppleCare, which is Apple's extended warranty and technical support service. [*Id.* at 18] Another approximately 490 employees work in Apple Global Business Services, providing financial services such as managing accounts payable, accounts receivable, and employee reimbursements, recording revenue and expenses, and maintaining financial records. [*Id.* at 18-19]

Moreover, Apple operates five retail stores located in WDTX. [Ex. 2 at 44] Those stores sell Apple products (including the accused products), aid customers in making decisions about product purchases, and aid customers in trading in or upgrading older generation devices for current models. [*Id.* at 45] Apple's retail stores host Apple's Genius Bar, which provides customer service in various areas, including hardware repairs, software repairs, and support for Apple services. [*Id.*] Some employees at Apple's non-retail and retail facilities are involved in operations, finance, sales, and/or customer support for Apple products. [*Id.*]

In addition, as discussed above, Apple has at least one employee located in Austin who participated in, and/or has pertinent knowledge about, events that gave rise to this suit. This lawsuit "calls into question the work and reputation" of that employee and potentially others that reside in WDTX. Their presence gives WDTX a localized interest in this case. *See Voxer*, 2020 WL 3416012, at *7; *SynKloud*, 2020 WL 2528545, at *7; *Fintiv*, 2019 WL 4743678, at *8. Crediting Apple's assertions that other pertinent Apple personnel are located in NDCA, the Court should find that the "local interests" factor is neutral and does not favor transfer. *See Voxer*, 2020 WL 3416012, at *7; *SynKloud*, 2020 WL 2528545, at *7; *Fintiv*, 2019 WL 4743678, at *8.

### 3. The Familiarity Of The Forum With The Law That Will Govern The Case And The Avoidance Of Unnecessary Problems Of Conflict Of Laws Or The Application Of Foreign Law.

Apple concedes that these factors are "neutral." [Dkt. #27 at 15] They do not favor transfer.

### C. Other Considerations Counsel Against Transfer.

The *Volkswagen* factors are "not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. "The Court may consider facts that do not expressly relate to the factors but are 'in the interests of justice,' 28 U.S.C. § 1404(a)." *Stingray Music*, 2017 WL 1022741, at *3. Relevant here is that Apple has previously filed patent infringement actions in Texas.[11] This "suggests that [Apple] may believe … venue [in Texas] to be favorable and convenient as a plaintiff in a patent lawsuit, but unfavorable and inconvenient as a defendant …. This weighs against transfer." *Id.*

## III. CONCLUSION

Apple has not carried its burden to show that NDCA is "clearly more convenient" than WDTX as a venue for this litigation. The Court should deny Apple Inc.'s motion to transfer.

---

[11] *See Apple Computer, Inc. v. Creative Tech. Ltd.*, No. 9:06-cv-114 (E.D. Tex. June 1, 2006); *Apple Computer, Inc. v. Creative Tech. Ltd.*, No. 9:06-cv-149 (E.D. Tex. Jul. 19, 2006); *Apple Computer, Inc. v. Creative Tech. Ltd.*, No. 9:06-cv-150 (E.D. Tex. Jul. 19, 2006).

Date: April 2, 2021                    Respectfully submitted,

                                       By: /s/ Greer N. Shaw

                                       Philip J. Graves (CA State Bar No. 153441)
                                       Email: philipg@hbsslaw.com
                                       Greer N. Shaw (CA State Bar No. 197960)
                                       Email: greers@hbsslaw.com
                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                       301 North Lake Avenue, Suite 920
                                       Pasadena, CA 91101
                                       Telephone: (213) 330-7150

                                       Craig D. Cherry (State Bar No. 24012419)
                                       craig@swclaw.com
                                       Justin W. Allen (State Bar No. 24081977)
                                       justin@swclaw.com
                                       STECKLER WAYNE COCHRAN CHERRY
                                       8416 Old McGregor Road
                                       Waco, Texas 76712
                                       Telephone: (254) 651-3690

                                       *Counsel for Plaintiff Neonode Smartphone LLC*

## <u>CERTIFICATE OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      At the time of service, I was over 18 years of age and not a party to this action.  I am

employed in the City and County of Los Angeles, State of California.  My business address is

Hagens Berman Sobol & Shapiro, 301 North Lake Avenue, Suite 920, Pasadena, CA 91101.

      On April 2, 2021, I served true copies of the following document described as the

following:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

on the interested parties in this action listed below via e-mail:

                               */s/ William Stevens*
                                  William Stevens

| | |
|---|---|
| Betty H. Chen | Jared A. Smith |
| Fish & Richardson PC | Fish & Richardson P.C. |
| 111 Congress Avenue, Suite 810 | 12860 El Camino Real, Suite 400 |
| Austin, TX 78701 | San Diego, CA 92130 |
| (512) 472-5070 | (858) 678-5070 |
| Fax: 512/320-8935 | Fax: (878) 678-5099 |
| Email: Bchen@fr.com | Email: Jasmith@fr.com |
| | |
| Benjamin C. Elacqua | Aamir A. Kazi |
| Kathryn A. Quisenberry | Fish & Richardson P.C. |
| Fish and Richardson PC | 1180 Peachtree Street NE, 21st Floor |
| 1221 McKinney Street Suite 2800 | Atlanta, GA 90309 |
| Houston, TX 77010 | (404) 892-5005 |
| 713-654-5300 | Fax: (404) 892-5002 |
| Fax: 713-652-0109 | Email: kazi@fr.com |
| Email: Elacqua@fr.com | |
| Email: Quisenberry@fr.com | |

*Attorneys for Defendant Apple Inc.*